Your Honor, in this matter there are two appellants. So I want to make sure that we've got the order right here and understand how you've divided your time. So we have two issues. One has to do with the class certification and the other has to do with the remand to the state court, the jurisdictional question. So what we have, let's see, who filed the blue brief? Was that Conoco? Was that the union? I'm not sure. I believe it was the United Steel and individual plaintiffsmen. I think both parties filed the blue brief, Your Honor. Yes, they're cross appeals, right? They were cross appeals. Well, I don't have two blue briefs. I only have one blue brief, and I hope I didn't miss something. I have one blue brief, one red brief, and then I have two responsive briefs. I think there is a second one. I'm pretty sure there is. Well, the United Steel submitted a blue brief, I believe. It's the appeal of the class cert motion, obviously, and then I don't know what Conoco's color was. Okay. And I do have, I see, and I've got the two reply briefs. Okay. Who are the counsel on the red brief, Your Honor? The red brief in front of you. The red brief is, okay, who's Akin Gump? That's Akin Gump. That's Akin Gump. And you represent Conoco Phillips. Yes, Your Honor. Okay. So Ms. Richardson, you're with Hansel Stormer. Correct. Okay. And Mr. Kentory with Gilbert Sackman. Okay. Let us start with the union certification question, and what we're going to need to do is I assume that you'll want to reserve some time for reply, but that will be a reply on the certification question. Let's see. What I was going to propose was that we proceed with the class cert appeal, let the defendants proceed with their response to that, and then their appeal on the remand. And then we would have Mr. Kentory responding on the remand, and I would respond on the class cert. Okay. And then they would have one more shot on the question of remand only. On remand only, correct. Okay. And all within your respective 15 minutes, right? I know. I'm going to be watching the clock. All within 15 minutes. We didn't set a timer on it. Okay. We'll do the best that we can. All right. Your proposal is, I think, quite in order, so let's proceed on that basis. Thank you, Your Honor. Do you understand that, counsel? Any comments on that? All right. Thank you. Thank you, Your Honors. My name is Ann Richardson. I'll be arguing the class cert appeal, and I would like to save two minutes for my co-counsel to argue the remand issue and three minutes for rebuttal. In this case, Your Honors, it was an abuse of discretion for the trial court to deny class certification simply because of the possibility that plaintiffs might lose on a common issue of law or fact, that is, whether there were on-duty meal breaks. That is not the burden at the class certification stage. Only the only question is whether or not there is a common question as to whether or not there are on-duty meal breaks and whether or not there's a waiver of those on-duty meal breaks. Those cases are clear from the Ninth Circuit and the United States Supreme Court. Plaintiff is not required to show that the class is going to prevail on the common issue of law or fact. This rule promotes efficiency because it allows this issue, whether or not Conoco has duty-free meal breaks, to be resolved class-wide. That is, plaintiffs might win on that issue, defendants might win on that issue, but it's still going to be resolved on a class-wide basis. It's going to be something that the defendants, if they win on, they will be able to have that a ruling for all of the putative class members. So it's an intelligent rule, as well as being the rule of the United States Supreme Court and this circuit. The alternative to having class certification in this case is 600 potential separate trials on the issue of whether or not there was an on-duty meal break. There's 600 potential class members in this case. The other error that the Court made was in somehow conflating the issues here with the issues that are on appeal before the California Supreme Court in Brinker and Bradley and Brinkley, two different cases, similar names. In those cases, the Court held that although the employer provided meal breaks, the employer was not required to ensure that employees actually took those meal breaks. But that's not the question here. In our case, our argument is that the employer has not provided off-duty meal periods. Here we have a policy stated in the collective bargaining agreement. There are 12-hour shifts. They're paid for 12 hours. There's no designated meal period. They are required to stay either on their unit or can only leave with permission. If they happen to need to use the restroom, you know, they have somebody watch them, but they are still responsible for responding if there's an error. If there's some kind of an alarm that goes off, they are responsible. So in that respect, this case is similar to Sequeiros and Perez v. Safety Clean. And the Conoco in this matter has this case exactly reversed because actually Sequeiros and Perez are still good law. They have not been disavowed or disapproved in the wake of Brinker or Bradley. In fact, Brinker, Bradley, and Brinkley are all unpublished decisions which are on review. But moreover, even if they were published and still binding, they distinguish Sequeiros and Perez from those facts precisely on the same grounds we have, that here there is evidence that the defendant did not even provide off-duty meal breaks, not a question of whether or not the employer ensured that people took them. So basically, no matter which way the Supreme Court rules in Brinker, it's not going to affect our case. Our case specifically would be distinguished on the same grounds that the Court distinguished Sequeiros. Moreover, the California Supreme Court in Murphy v. Kenneth Cole also supports the plaintiff's theory. There the Court said that even when an employee is paid for working through a lunch break, the employee is deprived of the right to be free of the employer's control during the meal period. That is the determinative question. Now, the defendant's argument here boils down to it saying in many, many different ways, look, the employees eventually eat. And sometimes there are long stretches where the alarm doesn't go off. And that may be true. You know, we have people here that go on their ship. They have certain affirmative tasks that they're required to do. And then for the remainder. Do I understand correctly that, I don't know whether it's a policy manual or whatever, that all of the employees of ConocoPhillips are required, whether they're on break or not, to have a phone or something close by where they can be called and be required to respond during that or any time during their shift? That's correct. They are required if they leave their unit. In the first instance, they're not supposed to leave their unit. But if they do leave their unit, if they're the console monitor watchers, then they have to take a radio or something. This is an issue, at least I gather, that the union alleges affects all of the 600 employees to which you make reference. That's correct. Both the operators and the lab workers are all in the same category in the sense that they're all shift workers. None of them have designated meal periods. They're all required to, if they're called by their supervisor, they have to immediately interrupt whatever they're doing and get back to work. And that is, I used to represent a little refinery at one point, and I understand a little bit how it works. And I gather that if something goes wrong, you've got to be there right now or you have the laws of physics in play and you can have an explosion of enormous proportions, right? That's exactly right. This is a potentially dangerous job. There are various kinds of alarms, high alarms, high alert alarms. There could be a very potentially serious emergency that would take place. And that arguably is part of why there is a reason that people have to be on call in order to respond. That's exactly right. So they have to be there. You never know when something's going to happen. There could be a long period of time where nothing does happen, but you have to be ready to respond as soon as something does happen. So consider the example. The conical argument appears to be, well, they eventually eat. Sometimes they're not interrupted. But the point is that wage hour 1-2001 requires that unless the employee is relieved of all duty, then it is considered an on-duty meal break. And that is the simple, boiling it down to its essence, that's the case that we have here. You might have considered the example of a receptionist answering a telephone. It's not enough for the defendant to say, well, she was able to eat and it wasn't interrupted. So it just so happened that that person wasn't interrupted. The point is that they're still on duty. You have to give them a meal period relieved of the responsibility to answer that phone. And an on-duty meal period is permitted only when they – only when you meet three requirements, that you can prove that the nature of the work prevents you from being relieved of all duty, that there's a written waiver, and that that waiver can be revoked. Those are also class-wide issues. They're a defensive issue for the Conoco to bring, but they're nevertheless classic questions that should be resolved on a class-wide basis. Are there any issues in Brinker and Bradley that would require this Court to wait for those decisions to come down? There really aren't. If you read Brinker, it clearly distinguishes our factual scenario and says the case such as Siqueiros and Perez were cases where the employer had not provided duty-free meal periods. And that's not Brinker. Are these currently on appeal to the California Supreme Court? They are. Are they pending? Have they been argued? I do not know. I don't believe they have been argued, Your Honor. They are pending. I believe they are only briefed in a way to predict the law. Okay. I just wanted to correct some of the evidence in the reply brief that ConocoPhillips cited. They cite two examples where people have meals, they have barbecues on relatively rare occasions. When those do occur, there's no controversy in the testimony, in the declarations or in the depositions. They're still on duty. If they're at a feed or a barbecue and they get a call, they have to leave. If they happen to get somebody to watch their console for them while they run down to the cafeteria and run back up, they're still on call. It's courtesy that somebody might watch their console. It doesn't relieve them of their responsibility to be there and to respond. And there's evidence that people are, in fact, disciplined if they don't answer their phones quickly enough. Have there ever been, according to the record, any lawsuits brought by anybody claiming that the refinery was negligent by not having people at their posts and as a result some fire or something resulted? I guess what I'm looking for is whether there's anything in the record that would indicate that there were very real consequences to ConocoPhillips if they didn't have a policy of requiring people to be there. Very good question. There's nothing in the record, but that is certainly the evidence of their 30b-6 representative, is that it is a continuous process of monitoring. There are potential problems that could go wrong. So I think it is a logical inference that you could make. There are things of which we could take judicial notice, presumably like the AQMD rules and things like that that require certain monitoring to occur continuously, right? Well, absolutely. And, in fact, their representative said it is a continuous process. It has to be monitored continuously. People are there, even if they may only have a few hours of active work where they're running around doing specific things, the rest of their shift they're monitoring their console. And that's a very important job when you have such potential catastrophic consequences. I think I'll reserve the rest of my time. Okay. Thank you. Good morning. I think it's still morning. Rex Heineke on behalf of ConocoPhillips. Turning to the class action issue, the district court indicated that he did not believe that plaintiffs could prove their on-duty theory on a class-wide basis. And why was that? Well, if you look at his ruling on summary judgment, the district court found that there were a number of contested factual issues that needed to be resolved before there could be a determination as to whether or not the operators were on duty. Those are set forth in the court's denial of summary judgment, which is in the record at 1166 to 1166. Is that the June 11th order? No, Your Honor. This is the March 16th order. Okay. That's the order on class or, I'm sorry, on summary judgment. And it is pages 7 and 8 of that order, starting at the bottom of page 7. And there the court goes through the evidence it believes is relevant to determining whether or not these employees are on duty. That includes whether or not they might be disciplined, whether or not they have to carry radios, whether or not they have to continuously be on duty, and whether or not they are relieved from duty. For example, when they go off to these feeds or go to the cafeteria where they have outdoor barbecues to feed themselves. So the district court found that those were the issues relevant to determining whether or not these people were on duty, and then later concluded that class certification wasn't appropriate because you couldn't resolve all these issues on an invasive basis. As I understand the plaintiff's theory, they are mostly concerned, I believe, with the June 11th order. And let me refer you to the pages I have. I have page 6 and page 7 of that order. Yes, Your Honor. And that's, I'm under the, there's a section B there, 23B requirements there. Do you see those? I have it, Your Honor. Okay. And here are the sentences that concern me. I'm looking at the second full paragraph on that page, the second sentence, in the instant case, defendant correctly points out that if plaintiff's on-duty theory of liability fails, then common questions will no longer predominate. Next sentence. In other words, if it is ultimately determined that they're not on duty. And then over to the next page, first sentence. Accordingly, if plaintiff's on-duty theory is rejected, a class action will not be the superior method of resolving this suit. And then down the next to the last sentence in that same thing, if they do not, the court will be faced with a case analogous to Brinker requiring individualized trials on each class member's meal period claims. I think the district court has really done a pretty thorough job here. Until we get to these paragraphs. And I am quite concerned that the district court has sort of jumped to the merits. And he sort of said, well, what if this is not an appropriate class action? Then it's going to turn out we're going to have to conduct individual trials. I think I agree with every word the district court wrote there. I'm not convinced, however, that it's appropriate for the district court to speculate on whether somebody will or will not prove the premise. Your Honor, I understand your concern. And this is what I think the district court was doing, and I think it was appropriate. I think the district court has to assess what is the legal theory here. Because the district court can't get to this determination under 23b-3 as to what are the predominance of the issues without determining what is the viable theory that exists here. If he were to certify this on the basis of the plaintiff's theory, which we understand essentially would be people needed permission to leave the refinery and they carried radios and that's all you need to know. If he were to certify it on that basis, let's assume he did that and then, excuse me, went forward, and then he determined, no, that's not a viable legal theory. You don't have a class action. If we were to turn those sentences around, if I were to rewrite those, if I were to say if plaintiff's on-duty theory of liability is correct, then their common questions will predominate over individual ones. That statement also appears to be true, doesn't it? Yes, Your Honor. But I think our point is we believe he made a determination that that theory wasn't viable here. It sounds like you're saying, Mr. Reinke, that the court in effect ruled on a 12b-6 motion. Is that what you're saying? On the facts of this complaint, there's just no way this can state a cause of action. Is that what the district court did here? I think. You didn't say there couldn't be a cause of action. No, I understand that. But I mean, in effect, I understand you to be saying that the court evaluated this and just said, you know, this is not going to happen this way. It doesn't constitute a cause of action, so I'm not even going to get there because otherwise we go down this long road and there's never going to be a cause of action. Your Honor, I'd say it slightly differently, although maybe it ends up at the same point. I think what the district court did was look at the plaintiff's theory and said you can't prove an on-duty case on that theory, and therefore you can't have a class action. But that's like a 12b-6 in effect, isn't it? In a sense. Then why are we arguing about class certification? Why shouldn't we just be arguing about the on-duty theory? Why don't we just jump to the merits here? Because isn't that what we would have to decide? And I think that's what the district court was trying to do was saying, well, I'm not going to decide the merits here, but in weighing the likelihood of what's going to go in front of a jury. But he wasn't issuing a preliminary injunction. No, no. But he has to weigh how the trial is going to go down. That's how you weigh the predominance of the issues. That's what you're trying to figure out. What's going to go on at the trial? What is likely to be the predominant issues? But I don't see any place in here where he said that the plaintiffs can't win on their on-duty theory. Is there someplace there where I should be looking? Well, Your Honor, I think you have to read this order along with the other order he issued the same day, his remand order, which was issued simultaneously. And if you look at that order on page 2 at the bottom of that order, Your Honor, I don't know if you have that available. That's the June 11th? Yes. They're both June 11th, Your Honor, because they were issued the same day. Where in the remand order, please? At the bottom of the second page, the very last paragraph, it says, In the instant case, there is, quote, there is no, quote, reasonably foreseeable possibility, unquote, that a class will be certified, given that plaintiffs have brought two unsuccessful certifications and that insurmountable problems preclude certification under 23b-3. That is, I think you have to read these orders together, and I think what the district court was concluding was that he didn't think there was any viability, or at least not enough viability in the plaintiff's theory to outweigh all the individual. I see the conclusion. Where's the analysis? Well, he didn't put in a whole lot of analysis. I mean, these are very complete orders. I love the work that the district judge did here, but I have to say, when we get to this point, again, I see the conclusion. I don't see the analysis, and it's a pretty important point of law. I understand, Your Honor, but I think you have to look at it going back to his summary judgment order and what he found were the triable issues on the on-duty issue. And if you look at what those issues are, they can't be proven on a class-wide basis. What troubles me here, though, I mean, you look at this remand order, and the district court cited some district court cases, including one from the Southern District of New York, and yet we've got Eisen and Carlisle and Jacqueline, a Supreme Court case. We've got Moore v. Hughes-Helicopter and Blackie v. Barrick that make it very clear that it is improper for the district court at this stage of the process to make a determination on the merits. And it sounds like, by this language, there is no reasonable foreseeable possibility that the class be certified, but the court is indirectly saying you can't state a cause of action. Is that wrong? Yes, Your Honor. We believe that's wrong. I think Eisen was being over-read. There are a number of decisions which we put in our brief that says that in the analysis, which the Supreme Court requires under Falcon, the rigorous analysis of 23b, that a district court does have to look at the merits issues, that it's not precluded from looking at the merits issues if those are intertwined with deciding the 23b issue. And we submit here that you cannot resolve the 23b issue without figuring out what the plaintiff has to prove because you can't figure out which issue is predominant. You have a particular case in mind, you think it's a very good example of where a district court said, you can't win on this issue and, therefore, I'm not going to certify the class. In our jurisdiction. There are none in the Ninth Circuit that say that. There are cases, we believe, in other circuits. For example, Your Honor, it's called Babineau, B-A-B-I-N-E-A-U v. Federal Express. It's an Eleventh Circuit decision reported at 576 Fed Third, 1183, especially at page 1190. There are no other cases. It must be a very recent case. Yes, Your Honor. It's decided July 27, 2009. Your Honor, there are a number of other circuits. And that case you're representing says that, in effect, what the district court did here is perfectly proper. Well, what the court says is that, on the one hand, the district court can't determine the merits, but the trial court, and I'm quoting, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied. And yet you have the same point that Judge Biby made, that the district court very carefully said, if this occurs and if this occurs. So it seems like the district court is projecting forward and deciding the merits, because by, in effect, denying the certification of the class, it ends this litigation. You end up with whatever jurisdiction, 600, we've been heard, separate actions. Well, you're left with, certainly you're left with the individual actions. Right. Because the district court, and we think it's clear from the summary judgment order, believe that the issues that were listed there, that he found were triable issues of fact, were not ones that could be decided on a class basis, and therefore class certification was appropriate. If you're right, counsel, then doesn't the district court's order become collateral as to whether or not you're entitled to recovery on the merits for the 600 individual cases? Well, I think the district court decided that question. If any of those 600 cases go to final judgment, if they don't go to final judgment, there's no final judgment that binds anybody. But haven't we made that legal determination at this point? I mean, that's your argument, is we've made the legal determination in the remand order.  And so I assume that you would take that one sentence and say the district court has already made a judgment on this, and you're barred from recovery. Yes, Your Honor, but your question was, is it collateral estoppel? And my response is it's not collateral estoppel before it becomes a judgment. And there's not going to be any judgment here because he didn't certify a class, so it's only binding on the named plaintiffs. They can't bind. In other words, a Rule 23 ruling can't possibly be the basis of collateral estoppel. For the people who are unnamed class members, it's collateral estoppel. But as to the named plaintiffs, they're now done. No, they can then come in. He said there's triable issues on the on-duty claim, and they can come in and try and prove they're right, and we can try and prove that they're wrong. But they can't prove the on-duty theory merely by showing they carried radios and they needed permission to leave the premises. You admit that this is a very close question, how we construe this Rule 23, because on the one hand, we have these cases in our circuit that say you can't get to the merits. On the other hand, how does he get to the ruling he did without sort of getting to the merits? I understand that, Your Honor, but I think if you look at the other cases that are now talking about this under Eisen, you will see a clear trend in this Eleventh Circuit, in the Seventh Circuit, where the courts are all saying, no, you can't read Eisen to mean you don't look at the merits. You can't make these determinations without looking at the merits. You certainly don't apply a factual measure. But when you look at the merits, Mr. Heinke, is the court saying there's no possibility like under 12b-6, you can't state a cause of action? Is that the standard that we're looking at here? I think that's, in this case, I think that's what the district court was saying, that the plaintiffs couldn't state a cause of action on their theory of what constitutes a merit. Right. And I understand that. But basically, the district court was saying if this weren't a class situation, if I had this case before me and I heard this theory, I would rule on 12b-6 that you don't state a cause of action. That's in effect what the district court did, right? I believe that's what the district court was saying.  All right. But he wouldn't, he would say 12b-6 if it were a 12b-6 motion. If that's all the plaintiff says they have to prove to win, that's not enough. And if that's what his summary judgment order means. Okay. I'd like to reserve, but I guess I'm not going to have more time on class certification. No. And you have 55 seconds on your time. We'll allow you a minute if you'd like to pursue the question of the remand. The remand, I think, in the end is easy, actually. Why is that? The language to us is absolutely crystal clear. And while there are a whole bunch of other things like the legislative history, if you look at the legislative history. But not so crystal clear that district courts couldn't get it confused. Your Honor, the fact that there are a number of district courts that go the other way obviously isn't the answer to the question. I know this Court and no other Court would add up the numbers and say that's the answer. Right. But it does suggest that maybe it's not crystal clear because we do have a lot of smart, well-intentioned people in the country who are Article III judges who have made a mistake. So somebody's made a mistake here. Somebody's made a mistake, Your Honor. But if you read the language, which says you've got to have $5 million, you've got to have a citizen of the State other than the defendant, and you have to have a class action. This is a class action. What the district court said is, oh, but once I deny class certification, it's not a class action. But the law, I think, is clear, like the U.S. Supreme Court decision in St. Paul. Things that happen afterwards, after removal, can't change the removal status. Is there a discretionary removal? We have a discretionary remand. We have cases in which we have 1367 suits that sort of come along for the right, and then we dismiss the underlying cause of action on which Federal jurisdiction was based. And there's discretion in the district court to say, look, we've got a State issue here that's important. Let's send it back to the State court and have them do it, as opposed to deciding to keep it. Does the district court have some discretion here, or is it now there? Well, Your Honor, we said if the court determined that the district court wasn't mandated to keep it, then it should be discretionary. But we don't think it's discretionary. In 1367, the statute says it's discretionary. And the last point I would make on this is to consider the practical implications of what happens and what happened here. District court denies class certification, remands the case to State court. In State court, the plaintiffs say, oh, we're going to pursue class certification in State court. If the district court knew they were going to have to try 600 individual cases because he's now got the case, might he think differently about this certification issue? Hopefully not, Your Honor. But what's happened is they're having been sent back to State court and saying, now I want class certification. We have now removed the case for a second time to Federal court because they claim it's a class action. And this will just go around in an endless circle if the law is that it's remanded when the Federal court says it's not a class action, because it will go back to State court, the plaintiffs will say, no, it is a class action, and the defendant is going to remove it again. It's inconceivable that Congress thought that that's the process it wanted to create here. That wastes the court's time, both State and Federal. It wastes the party's time. And I submit that is why this really, in the end, is an easy question. If you look at all the cases that are contrary to our position, not one of them considers this difficulty. Thank you. Mr. Cantori, are you both responding on the first issue and responding on the second issue? Or is this the rebuttal on the first issue or just the response on the second issue? This is the answer on the remand issue only, Your Honor. Okay. And I'm going to address that. Your Honor, I don't pretend that reasonable people can't disagree on the interpretation of 1332. Reasonable people can disagree. But I point the Court to 1332d-8. That is the section that says this section shall apply to any class action, which is defined, before or after the entry of a class certification order, which is also defined by the Court with respect to that action. So we are talking about a class certified. That's what a class certification order is, a certified class. So the Court has jurisdiction before and after class is certified. That's the way the statute reads. Okay? Now, we can all agree that if the Court had granted class certification, jurisdiction would lie under CAFA. The question then turns on what did it mean by before class certification. Did the Court mean only that the Court has its traditional jurisdiction to decide its own jurisdiction? That's always been the case. That a district court, a court of limited jurisdiction, has a jurisdiction to decide whether or not plaintiff lives in New York and defendant lives in California. Whether or not the claim in diversity is for $75,000 or not. That's what the district court always had. Always had that jurisdiction, even before CAFA. So now CAFA comes along and says, we're concerned about class actions. Not that a corporation is going to be hometowned in a state court, but that a class action is going to be brought in a state court. That's what the Congress was concerned about. And what Congress said here is, once there's no class, there's no jurisdiction, because you don't have complete diversity under A. You don't have the $75,000 per plaintiff that you need under A. You've got the $5 million, but that's aggregated, which are allowed under CAFA, and the district court was right. And you don't have the constant swinging door that counsel referred to, because they created the swinging door. How did they remove it the second time? We file a motion pending in district court about that second removal. How did they remove it the second time? There is no new pleading allowing removal. Now, I have to admit, if the district court were wrong in its class action determination, where the district court said, plaintiffs have Snowball's chance in hell of ever getting a class certified, which is their position, if the court was wrong on that, and the state court ultimately does certify a class, they can remove at that point. But that's not some kind of endless circle. And I also point out, they don't have a crystal ball. Suppose the class that plaintiffs were going to certify, instead of consisting of three refineries, the one in Los Angeles, the one in Santa Maria, and the one in Rodeo, only went after one. Do we still have the $5 million? I don't know. So, it is all speculative about the removal. Here, we do have a statute, Your Honor. And the statute expanded federal jurisdiction over what it had been. Over what it had been. The question is, how far? Did Congress intend that, remember, this is not a removal statute, it's a jurisdictional statute. Did Congress intend that any idiot who thinks that he's got a $5 million claim and a class that can be certified can bring that case in federal court? Well, anybody, to use your analogy, any idiot who thinks that he's diverse and has got a $75,000 claim has got jurisdiction in federal court. And there are some provisions in 1332 that do provide for costs, if it turns out that you don't have the $75,000 amount in controversy. Right, Your Honor. We don't have a comparable provision here, but we've always measured jurisdiction in the past at the time that the lawsuit was filed. And at the time the lawsuit was filed, according to the district court. I don't agree with the district court on this decision. And, you know, obviously, my colleague doesn't agree with the district court either. But if the district court is right that plaintiffs have a snowball's chance in hell of ever getting a class certified, then at the time we filed the complaint, we didn't have a class action. But that's going to only be determined on the merits. Ah, but the court decided the merits, essentially. Yeah, but you don't want us making that, then having that apply retroactively to the time that you filed this. No, Your Honor. I think the class should be certified. But if the class isn't certified, if the class is not certified, then, you know, counsel talks about forum shopping. This is forum shopping. We filed the complaint in state court. They were shopping for a more favorable forum in the district court, and they shopped. That's right. If you didn't want that, then you could have reduced the scope of your class action and or reduced the amount of your damages. That's correct, Your Honor. But you knew there was a risk that if you had more than a hundred potential plaintiffs. In another case, we stipulated to the removal. Right. I mean, it's not like this is, you know, but the question now becomes what did Congress intend by this amendment to the statute? But you think that it's 8 that is the principal clause that says that Congress intended that we send this back to the district court? Yes, Your Honor. Back to state court, I mean. Yes, Your Honor. Okay. Thank you. And now my colleague will address the other. Okay. You're out of time, but I will allow a moment here for. I just wanted to reiterate that I do believe that the point that you made, Your Honor, is that if the plaintiffs lose on that theory, then class should not be certified. That's where the Court went wrong. And what's interesting is that it's not the case, as the defendants tried to argue, that somehow the Court thought that we were going to lose because, in fact, the plaintiffs won the motion for summary judgment on the on-duty issue. In that March 16th ruling, the Court went through and talked about a lot of the evidence that the plaintiffs had provided that showed that they were on duty, that they carried radios, that they could be disciplined if they didn't respond. And so I think that, in fact, if anything, we have shown that we have a likelihood that we would get to a jury on that – we will get to a jury on that issue. The second thing is this question of whether or not in the Ninth Circuit the Court can consider the merits in ruling on a class certification issue. And this is an extremely important issue, and I think that the cases have been miscited, because in Moore and a number of other cases that we cite on pages 37 and 38 of our records, what the Court says is that you can look at the merits only as necessary to determine whether or not the Rule 23 factors are met. None of those cases at all suggest that you look at whether or not the plaintiff is going to prevail. For example, in – I think it was Hannon – the Court said that the legal defenses particular to the named plaintiff show that he wasn't a typical plaintiff. So there was no way that you could prove that one element that was necessary. That's what you do. You don't look at whether or not the plaintiff is going to win or lose on a common issue of fact, and that's where the Court went wrong. And I think it would be a grave misjustice to change class certification law in this way, to actually say, if you're going to win, it should be a class – no, it should be a class action, and if you're going to lose, it shouldn't.  Thank you, Your Honor. Thank you. So I think you have some time on – Your Honor, if I may respond about the remand. Our simple point in the end is this. Congress provided that if the requirements of CAFA are met, a defendant can remove the case to Federal court and is entitled to a Federal forum to decide the class certification issue. That's what CAFA is all about. If the district court can decide that issue and deny class certification and still remand it to State court where it's going to be litigated again, we are deprived of that Federal forum. That defeats what CAFA is all about. Now, I'd also like to turn to the language that is relied upon, because this really is the heart of the argument by our opponents. They cite 28 U.S.C. 1332d8, and they cite the definition of a class certification order, which is, quote, an order approving a case as a class action. And then they cite the additional language that says CAFA applies, quote, to any class action before or after the entry of a class certification order. All right? So take the definition of a class certification order and insert it there. CAFA applies to any class action before or after an order approving a case as a class action. It's before it or after it. You get a Federal forum. That's what the language says, and that's what we're entitled to, and the court should not remand it. That's why I say it's crystal clear. That's the language they rely on, but that language says we get it before and we get it after a class certification order. I think it's crystal clear that we're entitled to a Federal forum. Setting aside the practical things, setting aside the issue of when do you decide jurisdiction, which is when it's removed, not after there's a decision on issues like the amount and controversy and diversity and so on. It's absolutely clear, I submit, that we're entitled to that Federal forum. Your Honor, may I say one or two things about the class certification issue? Actually, you're not entitled to in the reply under the rules that we adopted. We thank both counsel for the argument. I do have a question for all counsel. Under CAFA, the court is obligated to issue its judgment within 60 days of the date on which we agreed to grant the petition, which by our calculations would be roughly about the 29th of November. Now, under CAFA, the court is in the unusual position of being able to get an extension only if counsel agrees to such an extension. So I'm asking you here, if you know whether you would consent to such an extension, if you wish to discuss it and don't wish to stare us in the face and tell us no, you may send us a letter if you'd like to think about it. But if you're prepared to answer at this point, I would love to have your response. We're prepared to answer, and we agree. Okay. We agree to all three of them. All right. Is there a point in time that you're going to say no? No. If you gave us an extension, it would then be our – we intend to decide this matter as expeditiously as possible. We realize that you were on tight deadlines, and we intend to honor the deadlines if possible. But in the way that it takes when you have three judges who are independently minded and have independently minded clerks, sometimes in the way of circulating all of this, it may take a little longer than the three weeks we have left. We have no problem with that. Good. Thank you very much. We thank counsel for the argument. ConocoPhillips is submitted. And with that, as soon as the panel has departed, the Court will stand in recess until tomorrow. Thank you, Your Honor. All rise. This Court stands in recess until tomorrow. Thank you. Beautiful.
judges: Nelson T. G., Bybee, Smith M.